SHERBORNE et al. v. WILCOX & GIBBS SEWING–MACH. CO.

(Circuit Court, E. D. Pennsylvania. January 2, 1901.)

No. 18.

PATENTS—LICENSE AGREEMENT—CONSTRUCTION—ROYALTIES.

A license agreement granting exclusive rights to defendants under two letters patent for the same invention, the younger of which did not expire until May 11, 1903, provided that the rights and obligations of the parties thereunder should continue until August 29, 1899, the date of the expiration of the elder patent, or so long thereafter as the licensee should continue to hold for the joint benefit of the parties any exclusive license rights under a prior license agreement, which contained a clause providing that such agreement should terminate with the life of the elder patent, "or, should any other patent or patents be obtained on pending applications relating to or covering a similar subject-matter as said patent, * * * then with the life of such subsequent patent or patents, having the longer duration, which, when issued, shall be considered to be covered by this agreement." *Held*, that defendants' obligation to pay royalties as required by their license terminated with the life of the younger, and not the elder, patent.

John G. Johnson and Frank P. Prichard, for plaintiffs.

P. K. Erdman, Geo. Tucker Bispham, and Howson & Howson, for defendant.

DALLAS, Circuit Judge. On the trial of this case the court reserved this point: "Whether the rights and obligations of the plaintiffs and defendant, under the agreement between them dated January 8, 1884, continued to the expiration of letters patent of the United States 341,790, or whether the said rights and obligations continued only until August 29, 1899;" and the jury was instructed to find for the plaintiffs, and to assess damages at $15,638.23 upon the hypothesis that those rights and obligations continue to the expiration of patent No. 341,790, and at $1,836.86 upon the hypothesis that they continued only until August 29, 1899. Accordingly, alternative verdicts were rendered, and the plaintiffs now move for judgment for the larger sum, viz. $15,638.23, and the defendant that judgment be entered for the smaller sum only, viz. $1,836.86.

The plaintiffs were the owners of certain patents for "trimmers," used as attachments to sewing machines, and the defendant was their exclusive licensee, under an agreement dated April 11, 1881, which provided, among other things, for the payment of a royalty in fixed sums for each trimming device sold, and 50 per centum of all moneys received as rent upon the leasing of said devices or of sewing machines containing them; "said license and privilege to continue to the full end of the term of letters patent No. 224,219," which, being the youngest of those to which that agreement related, expired on February 3, 1899. The contract of January 8, 1884, recited the agreement of April 11, 1881, as one "whereby the said parties of the first part did grant to the said parties of the second part * * * an exclusive license * * * of making or having made for application to and lease or sale with, and of applying to and of vending or leasing with, any sewing machines, other than those which sew zig-

zag seams, trimming devices having and containing the improve-
ments, or any of them, set forth in certain letters patent of the United
States in said agreement cited, or in any other letters patent of the
United States which the said parties of the first part might then or
thereafter own or control for any improvements upon the said pat-
ented inventions, or any of them. * * *" The said contract of
January 8, 1884, also contained the following recital and provisions:

"And whereas, for the purpose of extending the business carried on under
said license agreement of April 11, 1881, and for the mutual benefit of the
parties to said agreement, the said parties of the second part have (by and
with the consent of said parties of the first part) acquired by license agree-
ment, dated eighth day of January, 1884, an exclusive license for, to, and
within the United States under letters patent number 263,467, dated August
29, 1882, granted to John Bigelow for trimming device for overedge sewing
machine, and under any and all other patents owned or which may be granted
to or acquired by the said John Bigelow relating to simultaneous trimming
and overseaming, and are now engaged in perfecting, and preparing to build,
and place upon the market, combined sewing and trimming machines especially
adapted for trimming the edges of fabrics, and uniting said trimmed edges
by an overedge or overseam stitch (hereinafter referred to as trimming and
overseaming machines), and have agreed to pay to the said John Bigelow or
his assigns a royalty or license fee equivalent to twenty per cent. of all moneys
received by them, the said parties of the second part, as rental or royalty
for the use of said machines if leased, or a royalty or license fee of fifteen
dollars upon each and every such machine sold: Now, therefore, by and be-
tween the parties hereto it is covenanted and agreed as follows: (1) The roy-
alty to be paid by the said parties of the second part to the said parties of
the first part upon 'trimming and overseaming machines' made by or for and
leased by said parties of the second part shall be an amount equal to thirty
per cent. of all moneys received by said parties of the second part as rent
for the use of said machines, in lieu of an amount equal to fifty per cent. of
such moneys, as provided by clause 5 of said agreement of April 11, 1881.
This reduction of royalty is agreed to by said parties of the first part for
the purpose of reimbursing to the said parties of the second part the royalties
to be paid by them to the said John Bigelow or his assigns, as hereinabove
set forth, is to apply to trimming and overseaming machines only, and is to con-
tinue so far and so long only as shall be necessary to reimburse to the said
parties of the second part royalties actually paid by them to the said John
Bigelow or his assigns upon such machines. * * * (4) The terms of said
agreement of April 11, 1881, save so far as herein and hereby expressly chan-
ged or modified, shall apply to trimming and overseaming machines, and shall
ascertain and determine the respective rights and obligations of the parties
hereto in regard to the business of making and selling or leasing such ma-
chines, save that said business and said rights and obligations shall not expire
with letters patent 224,219, nor shall article 14 of said agreement of April 11,
1881, be operative under these presents; but the rights and obligations of the
parties thereto under the terms hereof. and of so much of the agreement of
April 11, 1881, as is hereby adopted and made part hereof, shall continue until
the 29th day of August, 1899, or so long thereafter as the said parties of the
second part shall continue to hold (for the joint benefit of the parties hereto)
any exclusive license rights under and by virtue of the hereinabove mentioned
license agreement with John Bigelow, or any renewal thereof or substitute
therefor."

The license agreement between John Bigelow and the defendant
which is referred to in the last-mentioned contract also bears date
as of January 8, 1884. It includes the following clauses:

"(1) The said licensor grants an exclusive license to the said licensees, and
empowers them to sublicense others to make and use the principles shown,
embodied, described, or covered in or by said letters patent No. 263,467, dated

August 29, 1882, or any patent or patents which may issue upon the original application, filed June 5, 1879; also a license, not exclusive, under letters patent No. 167,492, dated September 7, 1875. Subject to the conditions hereinafter named, and to the full end of the term for which said letters patent are or may be granted. * * * (9) This agreement, except as hereinbefore provided, shall terminate with the life of the letters patent No. 263,467; or, should any other patent or patents be obtained on a pending application now in the United States patent office, filed June 5, 1879, relating to or covering a similar subject-matter as said patent, viz. trimming in advance of overedge sewing, which application was made by the said licensor, then with the life of such subsequent patent or patents having the longer duration, which, when issued, shall be considered to be covered by this agreement, and a part thereof, the same as if specially mentioned."

When the Bigelow license agreement from which the above clauses have been extracted was made, the application therein referred to in clause 1 as "the original application" and in clause 9 as "a pending application" had been filed, but it had been divided into two divisions, A and B. Upon division A, patent No. 263,467, dated August 29, 1882, had been issued; and nearly four years thereafter a certain other patent, numbered 341,790, dated May 11, 1886, was issued upon division B. Consequently the elder of the two patents expired on August 29, 1899, but the younger will not expire until May 11, 1903; and the controversy is as to whether the contract between these parties of January 8, 1884, terminated with the life of patent No. 263,467, or continues to be operative because patent No. 341,790 is still a living one. The provision of that contract, respecting its continuance, is:

"The rights and obligations of the parties thereto under the terms hereof * * * shall continue until the 29th day of August, 1899, or so long thereafter as the said parties of the second part shall continue to hold (for the joint benefit of the parties hereto) any exclusive license rights under and by virtue of the hereinabove mentioned license agreement with John Bigelow, or any renewal thereof or substitute therefor."

There is here no patent ambiguity. The meaning of this language is plain, and nothing is requisite but to rightly apply it to the Bigelow agreement. That agreement did unquestionably grant an exclusive license under any patent which might issue upon the application of June 5, 1879, and therefore was inclusive of patent No. 341,790; but it is contended that, although the license extended to both patents, its duration was, by reason of the subject-matter of the later one, limited to the life of the earlier one. This contention is not accordant with what would naturally be supposed to have been intended if nothing had been said in the agreement respecting the period of its continuance; and it seems to me that the parties to it must have meant, when providing for its termination "with the life of such subsequent patent or patents," to refer to any and all subsequent patents covered by its granting clause. But, even when separately considered, clause 9 cannot be given the construction which the defendant seeks to put upon it. If it had stated merely that the agreement was to terminate with the life of any patent that might be obtained on the pending application, the defendant's position would manifestly be baseless, and its only possible support, therefore, must be found in this language: "Relating to or covering a similar subject-matter

as said patent, viz. trimming in advance of overedge sewing." On behalf of the plaintiffs it has been argued that these words naturally and grammatically apply not to the words "any other patents," but to the nearer words "pending application"; and a grammarian would, no doubt, affirm this point. But courts, in endeavoring to ascertain the true meaning of the parties to a contract, are not often aided by rules of grammar, and I do not attach importance to any mere nicety of literary composition in this instance. But, on more substantial grounds, I think that the "pending application," not the patent which had already been issued upon it, was the document prominently in mind when provision was made for the termination of the agreement with the life of any other patent to be obtained on that application. I believe that what the parties actually purposed was that the agreement should be operative so long as any other patent or patents which might be obtained upon that application should live, and that the added words, "relating to or covering a similar subject-matter," were not intended to qualify those which immediately preceded them, but were used simply to express the understanding of the parties that the subject-matter of any other patent which could be issued upon the application upon which patent No. 263,467 had been obtained would necessarily be "similar" to that of that patent. But, be this as it may, it seems to me to be clear that patent No. 341,790 does "relate to a similar [it could not "cover" the same] subject-matter as said patent" No. 263,467. The parties to this license agreement knew, when they made it, that the last-mentioned patent had been issued upon division A; that it showed the trimming device, and did not include it because it had been made the subject of division B; and that this device, though capable of being used with straight-ahead machines, was especially valuable for use in connection with overseaming; and I cannot believe that, knowing all this, they still did not regard that specific trimming device—the subject-matter of the second patent—as being related and similar to the subject-matter of the first, which was for a combination, of which, in every claim, a "trimmer" is stated to be an essential element.

I do not deem it necessary to comment upon the agreement of September 1, 1889, between John Bigelow and others of the first part and the defendant of the second part. It is enough to say of it that the only inference which, in my opinion, can be drawn from it, is not favorable to the defendant; and, without it, the plaintiffs' case is fully made out. The defendant's motion that judgment be entered on the verdict for $1,836.86 only is denied  The plaintiffs' motion for judgment on the verdict for $15,638.23 is granted.