WILLCOX & GIBBS SEWING-MACH. CO. v. SHERBORNE et al.

(Circuit Court of Appeals, Third Circuit. May 29, 1901.)

No. 28.

PATENTS—CONSTRUCTION OF LICENSE—TIME OF TERMINATION.

A license agreement covered a patent for a combined trimming and overseaming device for use on sewing machines. Such patent was granted on division "a" of a divisional application filed June 5, 1879, division "b" of which, covering the specific trimming device used in the combination, was still pending in the patent office. The agreement provided that it should terminate with the life of the patent named therein, "or should any other patent or patents be obtained on a pending application * * * filed June 5, 1879, relating to or covering a similar subject-matter as said patent, * * * which application was made by said licensor, then with the life of such subsequent patent or patents having the longer duration, which when issued shall be considered to be covered by this agreement." Held, that a patent subsequently issued on division "b" was clearly the one referred to in such provision, and was, moreover, one relating to a "similar subject-matter," and that the license agreement continued in force during the life of such patent.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

P. K. Erdman and George Tucker Bispham (Hubert Howson, on the brief), for plaintiff in error.

Frank P. Prichard and John G. Johnson, for defendants in error.

Before ACHESON and GRAY, Circuit Judges, and BUFFINGTON, District Judge.

GRAY, Circuit Judge. This was an action in assumpsit, in which the plaintiffs below (defendants in error) declared upon a contract in writing between them and the defendant below (plaintiff in error), dated January 8, 1884. This contract of January 8, 1884, was a modification of a contract between the same parties, also set out, dated April 11, 1881. The claim is for certain sums due as royalties under said contract, accruing prior to August 29, 1899, amounting, with interest, to $1,836.86, which is admitted, and also for certain sums alleged to be due as royalties thereunder, accruing since August 29, 1899, aggregating the sum of $15,638.23. The case was tried in the court below, before Dallas, circuit judge, and a jury. At the conclusion of the evidence, the court instructed the jury to find a verdict for the plaintiffs for the larger sum, subject to a point reserved, which will be best stated by quoting the opinion delivered by the learned judge (105 Fed. 970) upon a motion for judgment non obstante veredicto. This opinion, denying the motion, as set forth in the record, is as follows:

"On the trial of this case the court reserved this point: 'Whether the rights and obligations of the plaintiffs and defendant, under the agreement between

them dated January 8, 1884, continued to the expiration of letters patent of the United States 341,790, or whether the said rights and obligations continued only until August 29, 1899;' and the jury was instructed to find for the plaintiffs, and to assess damages at $15,638.23, upon the hypothesis that those rights and obligations continue to the expiration of patent No. 341,790, and at $1,836.86, upon the hypothesis that they continued only until August 29, 1899. Accordingly, alternative verdicts were rendered, and the plaintiffs now move for judgment for the larger sum, viz. $15,638.23, and the defendant that judgment be entered for the smaller sum only, viz. $1,836.86. The plaintiffs were the owners of certain patents for trimmers, used as attachments to sewing machines, and the defendant was their exclusive licensee, under an agreement dated April 11, 1881, which provided, among other things, for the payment of a royalty in fixed sums for each trimming device sold, and 50 per centum of all moneys received as rent upon the leasing of said devices or of sewing machines containing them; 'said license and privilege to continue to the full end of the term of letters patent No. 224,219,' which, being the youngest of those to which this agreement related, expired on February 3, 1899. The contract of January 8, 1884, recited the agreement of April 11, 1881, as one 'whereby the said parties of the first part did grant to the said parties of the second part * * * an exclusive license * * * of making or having made for application to and lease or sale with, and of applying to and of vending or leasing with, any sewing machines, other than those which sew zigzag seams, trimming devices having and containing the improvements, or any of them, set forth in certain letters patent of the United States in said agreement cited, or in any other letters patent of the United States which the said parties of the first part might then or thereafter own or control, for any improvements upon the said patented inventions, or any of them. * * *' The said contract of January 8, 1884, also contained the following recital and provisions: 'And whereas, for the purpose of extending the business carried on under said license agreement of April 11, 1881, and for the mutual benefit of the parties to said agreement, the said parties of the second part have (by and with the consent of said parties of the first part) acquired by license agreement, dated 8th day of January, 1884, an exclusive license for, to, and within the United States, under letters patent number 263,467, dated August 29, 1882, granted to John Bigelow for trimming device for overedge sewing machine, and under any and all other patents owned or which may be granted to or acquired by the said John Bigelow relating to simultaneous trimming and overseaming, and are now engaged in perfecting, and preparing to build and place upon the market, combined sewing and trimming machines especially adapted for trimming the edges of fabrics, and uniting said trimmed edges by an overedge or overseam stitch (hereinafter referred to as trimming and overseaming machines), and have agreed to pay to the said John Bigelow or his assigns a royalty or license fee equivalent to twenty per cent. of all moneys received by them, the said parties of the second part, as rental or royalty for the use of said machines if leased, or a royalty or license fee of fifteen dollars upon each and every such machine sold. Now, therefore, by and between the parties hereto, it is covenanted and agreed as follows: '(1) The royalty to be paid by the said parties of the second part to the said parties of the first part upon trimming and overseaming machines made by or for, and leased by, said parties of the second part, shall be an amount equal to thirty per cent. of all moneys received by said parties of the second part as rent for the use of said machines, in lieu of an amount equal to fifty per cent. of such moneys, as provided by clause 5 of said agreement of April 11, 1881. This reduction of royalty as agreed to by said parties of the first part for the purpose of reimbursing to the said parties of the second part the royalties to be paid by them to the said John Bigelow or his assigns, as hereinabove set forth, is to apply to trimming and overseaming machines only, and is to continue so far and so long only as shall be necessary to reimburse to the said parties of the second part royalties actually paid by them to the said John Bigelow or his assigns upon such machines. * * * (4) The terms of said agreement of April 11, 1881, save so far as herein and hereby expressly changed or modified, shall apply to trimming and overseaming machines, and shall ascertain and deter-

mine the respective rights and obligations of the parties hereto in regard to the business of making and selling or leasing of such machines, save that said business and said rights and obligations shall not expire with letters patent 224,219, nor shall article 14 of said agreement of April 11, 1881, be operative under these presents; but the rights and obligations of the parties thereto, under the terms hereof, and of so much of the agreement of April 11, 1881, as is hereby adopted and made part hereof, shall continue until the 29th day of August, 1899, or so long thereafter as the said parties of the second part shall continue to hold (for the joint benefit of the parties hereto) any exclusive license rights under and by virtue of the hereinabove mentioned license agreement with John Bigelow, or any renewal thereof or substitute therefor.'

"The license agreement between John Bigelow and the defendant, which is referred to in the last-mentioned contract, also bears date as of January 8, 1884. It includes the following clauses: '(1) The said licensor grants an exclusive license to the said licensees, and empowers them to sublicense others to make and use the principles shown, embodied, described, or covered in or by said letters patent No. 263,467, dated August 29, 1882, or any patent or patents which may issue upon the original application, filed June 5, 1879, and also a license, not exclusive, under letters patent No. 167,492, dated September 7, 1875, subject to the conditions hereinafter named, and to the full end of the term for which said letters patent are or may be granted. * * * (9) This agreement, except as hereinbefore provided, shall terminate with the life of the letters patent No. 263,467; or should any other patent or patents be obtained on a pending application now in the United States patent office, filed June 5, 1879, relating to or covering a similar subject-matter as said patent, viz. trimming in advance of overedge sewing, which application was made by the said licensor, then with the life of such subsequent patent or patents having the longer duration, which, when issued, shall be considered to be covered by this agreement and a part thereof, the same as if specially mentioned.'

"When the Bigelow license agreement from which the above clauses have been extracted was made, the application therein referred to in clause 1 as 'the original application,' and in clause 9 as 'a pending application,' had been filed; but it had been divided into two divisions,—'a' and 'b.' Upon division 'a,' patent No. 263,467, dated August 29, 1882, had been issued; and nearly four years thereafter a certain other patent, numbered 341,790, dated May 11, 1886, was issued upon division 'b.' Consequently the elder of the two patents expired on August 29, 1899, but the younger will not expire until May 11, 1903; and the controversy is as to whether the contract between these parties, of January 8, 1884, terminated with the life of patent No. 263,467, or continues to be operative because patent No. 341,790 is still a living one. The provision of that contract respecting its continuance is: 'The rights and obligations of the parties thereto, under the terms hereof, * * * shall continue until the 29th day of August, 1899, or so long thereafter as the said parties of the second part shall continue to hold (for the joint benefit of the parties hereto) any exclusive license rights under and by virtue of the herein above mentioned license agreement with John Bigelow, or any renewal thereof or substitute therefor.' There is here no patent ambiguity. The meaning of this language is plain, and nothing is requisite but to rightly apply it to the Bigelow agreement. That agreement did, unquestionably, grant an exclusive license under any patent which might issue upon the application of June 5, 1879, and therefore was inclusive of patent No. 341,790; but it is contended that, although the license extended to both patents, its duration was, by reason of the subject-matter of the later one, limited to the life of the earlier one. This contention is not accordant with what would naturally be supposed to have been intended if nothing had been said in the agreement respecting the period of its continuance; and it seems to me that the parties to it must have meant, when providing for its termination 'with the life of such subsequent patent or patents,' to refer to any and all subsequent patents covered by its granting clause. But, even when separately considered, clause 9 cannot be given the construction which the defendant seeks to put upon it. If it had stated merely that the agreement was to terminate with the life of any patent that might

be obtained on the pending application, the defendant's position would manifestly be baseless, and its only possible support, therefore, must be found in this language: 'Relating to or covering a similar subject-matter as said patent, viz. trimming in advance of overedge sewing.' On behalf of the plaintiffs, it has been argued that these words naturally and grammatically apply, not to the words, 'any other patents,' but to the nearer words, 'pending application,' and a grammarian would, no doubt, affirm this point. But courts, in endeavoring to ascertain the true meaning of the parties to a contract, are not often aided by rules of grammar, and I do not attach importance to any mere nicety of literary composition in this instance. But, on more substantial grounds, I think that the 'pending application,' not the patent which had already been issued upon it, was the document prominently in mind when provision was made for the termination of the agreement with the life of any other patent to be obtained on that application. I believe that what the parties actually purposed was that the agreement should be operative so long as any other patent or patents which might be obtained upon that application should live, and that the added words, 'relating to or covering a similar subject-matter, * * *' were not intended to qualify those which immediately preceded them, but were used simply to express the understanding of the parties that the subject-matter of any other patent which could be issued upon the application upon which patent No. 263,467 had been obtained would necessarily be 'similar' to that of the patent. But, be this as it may, it seems to me to be clear that patent No. 341,790 does 'relate to a similar' (it could not 'cover' the same) subject-matter as said patent No. 263,467. The parties to this license agreement knew, when they made it, that the last-mentioned patent had been issued upon division 'a'; that it showed the trimming device, and did not include it, because it had been made the subject of division 'b'; and that this device, though capable of being used with straight-ahead machines, was especially valuable for use in connection with overseaming; and I cannot believe that, knowing all this, they still did not regard that specific trimming device—the subject-matter of the second patent—as being related and similar to the subject-matter of the first, which was for a combination of which, in every claim, a 'trimmer' is stated to be an essential element.

"I do not deem it necessary to comment upon the agreement of September 1, 1899, between John Bigelow and others of the first part, and the defendant of the second part. It is enough to say of it that the only inference which, in my opinion, can be drawn from it, is not favorable to the defendant, and without it the plaintiffs' case is fully made out. The defendant's motion that judgment be entered on the verdict for $1,836.86 only is denied. The plaintiffs' motion for judgment on the verdict for $15,638.23 is granted."

As we agree with the learned judge of the court below in the interpretation that he has given to the contract upon which this suit was brought (the interpretation of which is the sole question involved in this case), it is not necessary to add anything to the reasoning which we think so clearly supports it. It is very clear that the patent taken out by Bigelow in 1886, being division "b" of the application of June 5, 1879, related to the subject-matter, both of the application itself and of the patent of 1882 (division "a"). The claims of division "a" cover the combination of any overseaming machine with any automatic trimmer arranged to act in advance of the overseaming mechanism. It is true that the claim was broad, and irrespective of the special form of either the overseaming or trimming device, and the machine of the combination was the first which had accomplished simultaneous overseaming and trimming. In the specification attached to the patent upon division "a" the patentee said: "Neither do I herein claim specifically the patentable elements of the trimming device shown, since I have made them the subject of division 'b' of this case." After obtaining this pat-

ent, and before any patent had issued upon division "b," Bigelow granted the license to the Wilcox & Gibbs Sewing-Machine Company. It was very natural that the parties to such a license should stipulate for the benefit of any patent which should issue upon division "b." It would be doing violence to the probabilities of the situation were we to do otherwise than say that the parties had the division "b" of the original patent in mind when writing clause 1 and clause 9 of the Bigelow license agreement, referred to in the agreement of January 8, 1884. The drawings attached to the later patent (division "b") were identical with the drawings attached to division "a," and in the specifications of this patent (division "b") the patentee says: "This application being a divisional application of original application, filed June 5, 1879, and patented August 29, 1882, No. 263,467." In the face of all this, we are not at liberty to adopt the fanciful conjecture suggested by the plaintiff in error, that, when the parties spoke of any other patents obtained on the pending application relating to a similar subject-matter, they must have had in mind some intended patent, other than division "b," or some other application, which, by some curious coincidence, might have happened to have been filed on the date of June 5, 1879. No evidence was offered tending to show that such other patent or such other application as suggested ever existed, though the patentee, John Bigelow, was called by the plaintiff in error as a witness, and the records of the patent office were available as evidence of the facts, if such facts there were.

We are of opinion, therefore, that whether viewed largely, from the standpoint of the situation of the parties, of the history of the application of June 5, 1879, and of the issue of the two patents, division "a" and division "b," thereunder, or, more narrowly, from the construction of the phrase, "relating to * * * a similar subject-matter as said patent, viz. trimming in advance of overedge sewing," the later patent (division "b") does relate to a similar subject-matter as that to which the former patent (division "a") related, and was intended by the parties to the contract of January 8, 1884, to be controlled for their mutual benefit, and to be the measure of the duration of the license agreement entered into with John Bigelow, on January 8, 1884, for their mutual advantage, and consequently of the duration of the obligation of the contract between them of even date. The judgment of the court below should be affirmed.